# Ross & Company's and Elsbree's Appeals.

1. A pre-existing judgment is not a lien on after acquired real estate, but an independent lien may be created upon such property, by an execution issued upon said judgment, accompanied by a levy.

2. In order to make such an independent lien a statutory lien, as to purchasers and mortgagees under the Act of April 22, 1856, § 3, (P. L., 532), the *levy* must appear of record. It is not sufficient to docket the *fi. fa.* only.

3. A mortgage given to the assignee of an existing confessed judgment by the defendant in the judgment, as an additional security therefor, is based upon sufficient consideration, and is valid as to other judgment creditors of the mortgagor; and this, although there may have been no consideration for the assignment of the judgment to the mortgagee.

4. Where the acknowledgment of a mortgage of lands in Pennsylvania recites that it is taken before a justice of the peace, but does not set out the county for which the said officer is a justice of the peace, the presumption is, that he is a justice for some county in the State; and in absence of proof to the contrary, the acknowledgment is good.

March 18th, 1884.   Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeals from the Court of Common Pleas of *Bradford county :*   Of January Term, 1884, Nos. 142 and 143.

Appeals by W. L. Ross & Co. and J. Leman Elsbree, from a decree of said court confirming the report of an Auditor appointed to make distribution of a fund, derived from the sheriff's sale of certain real estate, under executions issued by the said appellants.

Before the Auditor (D. A. Overton, Esq.), the following facts appeared: By the death of Isaac Morley on July 5, 1882, intestate, Reuben Morley, his son, inherited an undivided one-ninth share of his real estate. Ross & Co. and Elsbree had obtained judgments against Reuben Morley in 1869 and 1875 respectively. On August 14, 1882, a fieri facias was issued upon the judgment of Ross & Co., which was indexed in the judgment index docket; the execution was received by the sheriff of Bradford county, and levy made on defendant's one-ninth interest, all upon the same day. On August 26, 1882, notice was given to defendant of inquisition, which was held September 2, 1882, land condemned, execution returned with levy on said land, nulla bona as to personal property, and September 14, 1882, a venditioni exponas was issued.

On August 17, 1882, a second alias fieri facias was issued upon the Elsbree judgments, received by the sheriff of Bradford county, and levy made on defendant's one-ninth interest.

.August 28, 1882, execution returned with levy on said land, nulla bona as to personal property, and September 15, 1882, a venditioni exponas was issued. Upon the executions issued on these judgments, the defendant's interest was sold December 1, 1882, for the sum of $430, to Elsbree.

On September 12, 1882, A. & J. Morley obtained a judgment by amicable confession against their brother Reuben Morley for $4,340.33, as of No. 60, December Term, 1882.

September 15, 1882, Reuben Morley executed a mortgage to Luman Putnam, Jr., which was acknowledged and recorded September 16, 1882. The mortgage recited *inter alia*, that it was given to secure the payment of judgment No. 60, December Term, 1882, Bradford county common pleas, which Luman Putnam, Jr., holds to his use. This mortgage was upon the same interest *inter alia* as sold by the sheriff. The acknowledgment thereon was as follows:

"On the 16th day of September, Anno Domini, 1882, before me, a justice of the peace, personally appeared the above named Reuben Morley, and in due form of law acknowledged the above indenture of mortgage to be his act and deed, and desired the same might be recorded as such.

"Witness my hand and seal the day and year aforesaid.
                    "J. S. WILLISTON, J. P.    [Seal.]"

On the judgment docket index for Bradford county from August 10, 1882, to the date of the audit, there appeared no entries of the levies on the land sold under the above executions, although the *fi. fas.* were docketed.

At the audit Putnam claimed that his mortgage should be preferred to the Ross and Elsbree executions because the same were not indexed in the judgment docket index as executions levied on real estate, pursuant to Act of 1856, § 3, (P. L., 532).

Ross & Co. and Elsbree, on the other hand, claimed priority for their executions over the mortgage, in spite of any alleged defect in the indexing of the former, on the grounds *inter alia*, that the acknowledgment of the Putnam mortgage was defective, in that it did not show on its face for what county the officer taking it was justice of the peace; that the mortgage was without valid consideration, and that the Morleys had actual knowledge that the executions in favor of Ross & Co. and Elsbree had been issued before the mortgage was executed.

By his report the Auditor awarded the fund in his hands to Putnam on his mortgage, in preference to the Ross & Elsbree executions.

Exceptions filed to this report were dismissed by the court,

MORROW, P. J., delivering the opinion, which was, *inter alia*, as
follows :

"The levy in the executions of Ross & Co. and Elsbree
created a valid lien on the land against all persons, except
purchasers and mortgagees, and it was good against them
with actual notice, or if it had been indexed on the judg-
ment index as required by the Act of April 22, 1856, Pampl.
L., 532. It was not so indexed, and hence the burden was on
the plaintiffs in the executions to show actual notice. This
they failed to do. The most the evidence shows is that Job
Morley was apprehensive of an execution lien. He knew the
executions were out—knew the return day had passed. But
these facts might exist and he have no knowledge that a levy
had been made. . . . . . It was in the absence of notice,
therefore, that he took the mortgage. It was taken to better
secure the payment of a judgment that had been revived four
days previous, and for no other consideration. From the evi-
dence and finding of the Auditor it had no other effect than
if taken in the name of A. & J. Morley. The debt was *bona
fide* and actual. The mortgage was a higher and better secu-
rity. It gave to the creditors additional rights. The consid-
eration was sufficient, and the parties were bound. The object,
no doubt, was to obtain a lien prior to any lien that might be
obtained on the executions. This they had the same right to
do as to take a judgment in advance of another, or place an
execution in the hands of the sheriff in advance of one pre-
viously issued. It was a statutory right, and I see no legal
objection to such vigilance where the transaction is honest.
But it is claimed the mortgage was defectively acknowledged,
and the record gave no lien. There is no county mentioned
either in the caption or body of the acknowledgment. It was
taken, however, before a justice of the peace. The land is in
this county. The certificate is—"the above-named Reuben
Morley appeared before me, a justice of the peace, and
acknowledged," etc. On the face of the mortgage it is—
"Reuben Morley of Burlington Boro,' Bradford county,
Pennsylvania, of the second part." It is precisely the case
of Fuhrman *v.* Loudon, 13 S. & R., 386, except there the cer-
tificate showed the party appeared ' before me a justice of the
peace in and for said county,' and it was held it referred to
the county mentioned in the deed. . . . . . It is not to be
presumed that J. S. Williston was a justice of the peace of
some other state, but on the contrary the certificate is prima
facie he was a justice of the peace of some county in the
state of Pennsylvania, and hence the acknowledgment was
good and sufficient."

The court therefore confirmed the auditor's report, and

entered a decree accordingly. Whereupon Ross & Co. and Elsbree took these appeals, assigning for error the decree of the court.

*Rodney A. Mercur*, for appellants.—We do not deny that under § 3 of the Act of April 22, 1856, it was necessary to index the levy of the appellant's executions in order to affect *bona fide* purchasers and mortgagees, without notice, but we contend the facts in this case show the appellee is not a *bona fide* mortgagee, or without notice, and therefore as to him it was not necessary to index the levy in the appellants' executions. The executions were indexed. They were notice to Putnam, and he had other knowledge of them, because knowledge by Morley was knowledge by Putnam, and Job Morley knew they were issued before the mortgage was executed, as found by the auditor. The levy in executions was made the same day they were issued, which was before he knew the executions were issued. He must then have had knowledge of the levy. The mortgage was given to secure a judgment, the consideration for which was a pre-existing debt. Putnam was therefore not entitled to protection as mortgagee against prior equities, even if he had no notice of them when he took the mortgage : 1 Jones on Mtg's, § 458; Dickerson *v.* Tillinghast, 4 Paige, 215; Weaver *v.* Barden, 49 N. Y., 286; Cary *v.* White, 52 N. Y., 141; De Lancey *v.* Stearns, 66 N. Y., 157. The Act of May 2, 1715, § 2, provides for the acknowledgment of deeds, inter alia, before "one of the justices of the peace of the proper county or city where the lands lie," and § 8 provides that no deed or mortgage shall be valid "unless such deed be acknowledged or proved and recorded, as hereinbefore directed." The acknowledgment to Putnam's mortgage has no caption. It does not state that the officer is a justice of the peace of any county or state, and the auditor did not find that at the time the officer took the acknowledgment he acted within his jurisdiction. The defective acknowledgment of a deed or mortgage is a nullity : Myers *v.* Boyd, 15 Norris, 427. If the record of a mortgage be defective for any cause, it does not amount to constructive notice. Every statutory requirement in relation to the execution and acknowledgment or proof of the mortgage must be complied with in order to gain priority by the record of it : 1 Jones on Mortgages, § 550; Heister *v.* Fortner, 2 Binney, 40; Simon *v.* Brown, 3 Yeates, 186. The mortgage was therefore not entitled to be recorded, and was a nullity; and the appellants' judgments, which were first liens on the land sold, at the time the mortgage was executed, should have been paid out of the fund produced by the sheriff's sale.

*John F. Sanderson* (with whom was *Edward Overton, Jr.*), for the appellee.—In this case the mortgagor and mortgagee are described as residents of Burlington Borough, Bradford county, Pennsylvania, and the lands mortgaged are described as situate in Athens township, county of Bradford aforesaid, and the presumption is, therefore, that J. S. Williston was a justice of the peace of Bradford county, and that he took the acknowledgment therein: Fuhrman *v.* Loudon, 13 S. & R., 387; Angier *v.* Schieffelin, 22 P. F. S., 106; Brooks *v.* Chaplin, 3 Vermont, 281; Carpenter *v.* Dexter, 8 Wallace, 513; Livingston *v.* Kettelle, 1 Gilman, 116; Irving *v.* Brownell, 11 Ill., 402; Graham *v.* Anderson, 42 Ill., 514.

Mr. Justice GORDON delivered the opinion of the court, May 19, 1884.

As long ago as the case of Colhoun *v.* Snider, 6 Bin., 135, it was held that a pre-existing judgment was not a lien on after acquired real estate, and the doctrine of this case has been followed without doubt or hesitation from that time to this. Upon such property an independent lien may be created by an execution issued from such judgment; but in order to accomplish that result it must be accompanied by a levy: Stauffer *v.* The Commissioners, 1 Watts, 300; Packer's Appeal, 6 Barr, 277. It is, therefore, clear that the Ross & Co. and Elsbree fi. fas., by virtue of their levies upon the land from the sale of which the money in dispute was raised, were liens at common law; and that, in point of date, these liens outranked the Putnam mortgage, is not disputed. But as these executions, with their levies, were not docketed as prescribed by the Act of the 22d of April, 1856, they were not, as to purchasers and mortgagees, statutory liens. " The lien of no execution," reads the statute, " *levied* on real estate, shall commence or be continued, as against any purchaser or mortgagee, unless the same be indexed in the county where the real estate is situated." Now it is idle to say that the docketing of the fi. fa. alone was either a compliance with the Act, or constructive notice to the mortgagee. It is the execution *levied* that is the lien both under the Act and at common law. Hence, if the levy does not appear of record, there is, and can be, no statutory lien. So the question of constructive notice is put out of the case from the fact, that had the mortgagee looked just where he was bound to look he would have found an execution without a levy. It is said, however, that the Putnam mortgage was void for want of consideration. We cannot see the matter in this light. This mortgage was given to secure the Morley judgment, which had been marked to the use of Putnam. The consideration, therefore, moving

Reuben Morley to the execution of the mortgage was valid and lawful, and further than this we need not go. It may be that the assignment of the H. & J. Morley judgment may not, as between them and Putnam, have been good for the want of consideration, but that is a matter between themselves, and with which the appellants had nothing to do. It is further urged that the execution of the mortgage is worthless as notice, in that it does not appear, in the certificate of acknowledgment, that the officer taking it was a justice of the peace for the county of Bradford. The person thus certifying, however, subscribes himself as a justice of the peace, and, as was said in Fuhrman v. London, 13 S. & R., 386, it cannot be supposed that he would have received the acknowledgment of a deed or mortgage for or on lands in Pennsylvania, unless he had been a justice of the peace for some county in the state : see also Angier v. Schieffelin, 22 P. F. S., 106. Notwithstanding, therefore, the able and ingenious argument of the counsel for the appellants, we cannot see our way clear to reverse the court below.

The appeals are dismissed, and the decree affirmed at the costs of the appellants.