# Middleton's Executors *versus* Middleton.

1. Where a judgment has been recovered against a man in his lifetime, it may be revived after his death, for the purpose of lien and execution, by a scire facias to revive, *et quare executionem non*, issued against his personal representatives alone. In such case it is unnecessary to bring in the widow and heirs by a scire facias against them.

2. It is immaterial that at the time of the defendant's death the judgment was more than five years old, and that a scire facias to revive, which had been issued against the defendant within the five years, was at

[ Middleton *v.* Middleton.]

his death pending and undetermined. The judgment as between the original parties having been a valid subsisting lien on the land at the time of the defendant's death, it was unnecessary to warn the widow and heirs in addition to proceeding against the administratrix for revival and execution. Nor was it necessary to issue a sci. fa., under the 27th section of the Act of February 24, 1834, to require the administratrix to become a party to the pending sci. fa. to revive, issued against the defendant in his lifetime, and undetermined at his death.

3. A judgment entered against an administratrix by default for want of an appearance in a sci. fa. to revive a judgment obtained against her intestate in his lifetime, is a valid judgment, and a sheriff's sale under an execution thereon will, if otherwise valid, pass a good and marketable title to land of which the decedent was seised.

4. The omission of words of inheritance in a sheriff's deed does not limit the estate conveyed to the purchaser, which, by force of the Act of June 16, 1836, is that estate which the defendant in the execution had.

5. An error in the described courses of land conveyed by a sheriff's deed, which can be corrected by other descriptive matter in the deed, so as to locate with reasonable certainty the land intended to be conveyed, is immaterial, and does not prevent the deed from vesting in the grantee a good and marketable title.

April 7, 1884.   Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and CLARK, JJ.   PAXSON and GREEN, JJ., absent.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term, 1884, No. 175.

This was a case stated, wherein Charles Middleton et al., executors of Allen Middleton, deceased, were plaintiffs, and C. Wilmer Middleton was defendant, setting forth the following facts for the judgment of the court as upon a special verdict, the parties reserving the right to take a writ of error from the judgment:—

Defendant agreed to purchase from plaintiffs two certain tracts of lands situated in the city of Philadelphia, late in the township of Lower Dublin, county of Philadelphia, containing respectively 63 acres, 66 perches, and 33 acres, 129 perches of land, for the price or consideration of thirty thousand dollars; plaintiffs at the same time agreeing that the title to said tracts of land should be good and marketable, and clear of all encumbrances.   And thereupon plaintiffs on March 1, 1883, duly executed, acknowledged, and tendered to defendants a deed in due form for said tracts of land, and demanded payment of the said price of thirty thousand dollars.   Defendant refused to accept the deed, or pay the money, on the ground that such deed would not pass a good and marketable title in fee simple to the land.

One John W. Middleton was in his lifetime seised of said lands in fee simple subject to the lien of a judgment entered in the District Court for the city and county of Philadelphia,

[Middleton *v.* Middleton.]

at the suit of plaintiffs' testator, Allen Middleton, against the said John W. Middleton to December Term, 1872, No. 1911. Said judgment was entered February 26, 1873, for $35,841.63, and was the fifth judgment of revival of a confessed judgment entered in the same court March 29, 1853, to March Term, 1853, No. 91.

Afterwards Allen Middleton died, and plaintiffs, his executors, having been substituted, on December 1, 1877, issued a sci. fa. against John W. Middleton, to revive said judgment and qu. ex. non, to which said John W. Middleton made defence, filed pleas and issue was joined, but before the same came to trial said John W. Middleton died, leaving him surviving a widow, Sarah Middleton, and five children, to wit, Anna Smallwood, Clara Paul, Richard A. Middleton, Emma Kaighn, and Alice Middleton ; and the said Sarah Middleton took out letters of administration on his estate.

On February 24, 1879, by writing filed, the death of said John W. Middleton was suggested on the record of said judgment, and in February 26, 1879, a sci. fa. to revive and qu. ex. non was issued against Sarah Middleton, administratrix, which was returned " made known."

On May 20, 1879, judgment was entered on said sci. fa. for want of an appearance, and damages were assessed the same day at $49,282.23.

A fi. fa. issued on this judgment the same day, under which the tracts of land hereinbefore mentioned were levied upon and condemned. A vend. ex. issued June 23, 1879, and said tracts were sold to plaintiffs by the sheriff on the first Monday of July, 1879, and Sheriff William H. Wright executed deeds for the same to plaintiffs, which deeds were acknowledged in open Court of Common Pleas, No. 1, for the county of Philadelphia, July 12, 1879, and entered among the records thereof. The grant in said deeds was in the following words, to wit: " Have granted, bargained and sold, and by these presents according to the directions of the said writ and by force and virtue thereof, and the Constitution and laws of this Commonwealth in such case made and provided, do grant, bargain and sell unto the said Charles Middleton, Allen Middleton, William de Cou, and Howard W. Middleton, executors of Allen Middleton, deceased, the tract or piece of land aforesaid."

And the habendum was in the following words, to wit: " To have and to hold all and singular the hereditaments and premises hereby granted, with the appurtenances, unto the said Charles Middleton, Allen Middleton, William De Cou, and Howard W. Middleton, executors of Allen Middleton, deceased, their successors and assigns, to and for their only

[Middleton v. Middleton.]

proper use and behoof forever, according to the form, force and effect of the laws and usages of this Commonwealth in such case made and provided."

In the deed for the 33-acre tract from Sheriff Wright to plaintiffs the 7th and 12th courses are respectively described as south $60\frac{1}{4}°$ east, and north $37\frac{3}{4}°$ east, whereas in truth the said courses are south $6\frac{1}{4}°$ east, and north $57\frac{3}{4}°$ east; the same error occurs in the fi. fa. and vend. ex. under which said tract was sold.

On May 22, 1879 (the same day the fi. fa. issued under which the land was levied and condemned), a sci. fa. was issued to bring heirs of said John W. Middleton, deceased, and the following return made thereto, to wit: "Made known to Emma Kaighn and Alice Middleton, and *nihil habet* as to Anna Smallwood, Clara Paul, Richard A. Middleton, and Sarah Middleton, administratrix." No further proceedings were had under this sci. fa., and no judgment was entered against said heirs.

It is further agreed as a fact that the plaintiffs in this present cause were the plaintiffs in the execution upon which the said tracts of land were sold, and under which they purchased and to whom Sheriff Wright executed deeds therefor.

The above-mentioned two sheriff's deeds, together with the record and docket entries of said suit, were made part of this case stated.

If the court should be of opinion that said deeds, with the proceedings resulting in the sheriff's sale, vested in plaintiffs a good and marketable title in fee simple in said tracts of land, then judgment to be entered for plaintiffs for thirty thousand dollars, with interest from March 1, 1883, and costs (said judgment to be satisfied of record upon defendant paying the amount thereof, with costs, and plaintiffs giving him a deed in fee simple clear of all encumbrances for said tracts of land), otherwise judgment to be entered for defendant with costs.

The court after argument filed the following opinion and judgment:

" The question raised in the case stated is whether the title to certain real estate is such as the purchaser is bound to accept. It appears that a judgment was obtained on February 26, 1873, against a certain John W. Middleton. On Dec. 1877, a sci. fa. was issued against him to revive it; to this defendant pleaded payment, and issue was joined, which, at the time of his death, Dec. 1878, was pending and undetermined. On February 26, 1879, a sci. fa. was issued against Sarah Middleton, administratrix, which was not in form a sci. fa. to bring in the personal representatives, but a sci. fa. to revive, and on this a money judgment was taken. As the only prior judg-

ment bore date in 1873, it was clearly too late for this process to revive it.

"The most favorable construction on the proceeding is to regard it as intended to bring in the personal representatives, and to consider the judgment as valid against the administrator. This the plaintiff contends is all that can be required. That when there is a valid, unimpeached judgment existing at the death of the defendant, the bringing in of heirs by sci. fa. is not necessary: McMillan *v.* Red, 4 W. & S., 237. But can this judgment be so considered? Its revival was contested by the defendant, and his plea of payment on his death left undetermined. Was this not, in the words of the Act of 1834, "an action or legal proceeding depending" at the death of the defendant, and was it not the duty of the plaintiff, if he wished to charge the lands, to bring in the heirs? They clearly have had no day in court. Their ancestor was resisting this claim in a proper legal forum to the day of his death, after which a judgment was entered against an administrator, and the only notice taken of the heirs was to sell their property under it. Certainly this is the very evil the Act of 1834 was intended to prevent. Entertaining these views on the main objection to the title, we do not think it necessary to discuss the minor ones. The title, in our opinion, is not so free from doubt as to the rights of the heirs of John W. Middleton as to compel its acceptance."

"Judgment for defendant on case stated, with costs."

The plaintiffs took this writ of error and filed the following specifications of errors:—

1. The court below erred in not holding that the sci. fa. of 1879 was an abandonment of the sci. fa. of 1877.

2. In holding that the sci. fa. of 1879 was a sci. fa. to bring in personal representatives, whereas it was in form and in fact a sci. fa. to revive and quare executionem non.

3. In holding that the judgment of 1873 was not an unimpeached judgment.

4. In entering judgment on the case stated for defendants.

5. In not entering judgment on the case stated for plaintiffs.

*J. Cooke Longstreth* (with him *George Bull* and *James H. Campbell*) for the plaintiffs in error.—Where a judgment has been recovered against a man in his lifetime, within twenty years prior to his death, the same may be revived after his death, by a sci. fa. to revive et qu. ex. non against his personal representatives, without notice to his widow or heirs. It is only where a general creditor seeks to charge a decedent's real estate with the payment of general debts, by recovering

[Middleton v. Middleton.]

judgment, that it is necessary, under the Act of 1834, to bring in his widow and heirs by scire facias: Fetterman v. Murphy, 4 Watts, 425; Brobst v. Bright, 8 Watts, 124; Wells v. Baird, 3 Barr, 351; Konigmaker v. Brown, 2 Harris, 269; Aurand's Appeal, 34 Pa. St., 151; Baxter v. Allen, 1 W. N. C., 271, s. c. 27 P. F. S., 468; Chambers v. Carson, 2 Whart., 9. This case is exactly ruled by McMillan v. Red, 4 W. & S., 237, which has been frequently approved: Riland v. Eckert, 11 Harris, 215; McMurray's Adm'rs v. Hopper, 7 Wr., 468; Bennett v. Fulmer, 13 Wr., 155; Diese v. Fackler, 8 P. F. S., 109; Shearer v. Brinley, 26 P. F. S., 300; Brown's Appeal, 10 Norris, 485.

The omission of words of inheritance in the sheriff's deed cannot limit the estate conveyed, which by statute is that of the defendant in the execution: Act of June 16, 1836, Purd. Dig. 651, pl. 82; Streaper v. Fisher, 1 Rawle, 155; Grubb v. Guilford, 4 Watts, 223; Heartley v. Beaum, 2 Barr, 165; Hoffman v. Danner, 2 Harris, 25; Wright v. Iron Ore Co., 9 Wr., 475.

The error in the description of two of the courses of the tract is immaterial, as, taking the description as a whole, there is no difficulty in identifying the tract intended to be conveyed. In the case of descriptive errors, where no one is shown to have been injured thereby, the same rules of construction applicable to deeds inter partes apply to sheriffs' deeds: White v. Luning, 93 U. S., 514; Martz v. Hartley, 4 Watts, 263; Cox v. Couch, 8 Barr, 154; Petts v. Gaw, 3 Harris, 218; Quinn v. Heart, 7 Wr., 337; Wood v. Appal, 13 P. F. S., 210; Wagner v. Wagner, 18 P. F. S., 392; Watson v. Jones, 4 Norris, 117; Pruner v. Brisbin, 2 Out., 202.

Neither the fact that Middleton in his lifetime took defence to the sci. fa., which his administratrix chose not to persist in, nor that a sci. fa. to bring in heirs was issued and not followed out to judgment, can prevent the application of the well-defined principles of law above stated from applying to this case. The error the court fell into was consequent upon the assumption that the sci. fa. of 1879 was intended as a sci. fa. to bring in personal representatives to defend a pending litigation, whereas in form and in fact it was a sci. fa. under the 33d section of the Act of 24th of February, 1834, to show cause why execution should not issue on the judgment obtained against the decedent in his lifetime, in 1873. Also, in not adverting to the effect of the sci. fa. of 1879 as an abandonment of the pending sci. fa. of 1877. That such was its effect is clearly decided in Meason's Estate, 4 Watts, 341.

*E. Coppée Mitchell* (*Horace F. Weeks* with him), for the

[Middleton *v.* Middleton.]

defendant in error.—The judgment against John W. Middleton was originally entered in 1853; it was revived several times, the last judgment of revival in defendant's lifetime being entered February 26, 1873. He died in December, 1878. Prior to his death, to wit, December 1, 1877, a sci. fa. to revive the judgment was issued against him, which was contested at every step, by affidavit of defence, pleas, petition to remove to United States Circuit Court, bill of discovery, etc., and which was pending and undetermined when the defendant died. Upon his death being suggested of record that contest ceased, and a new sci. fa. was immediately issued against his administratrix, who, failing to appear, permitted judgment to be taken by default, and at the sheriff's sale, under that judgment, the defaulting administratrix herself bought two properties for $50, and the execution plaintiffs bought the rest for $100, which the latter, within two years, sold to defendant in error for $30,000.

On the same day that the sci. fa. was issued against the administratrix a sci. fa. was issued to bring in the heirs of the decedent, but it was only partially served, and no further proceedings were had thereon.

We have then the following state of facts disclosed by the record : (1.) The validity of the judgment was actually contested by the defendant in his life time. (2.) After his death the proceedings in which this contest was going on were ignored and abandoned. (3.) No defence whatever was made by defendants' administratrix. (4.) She bought part of the property in her own right, and apparently for her own benefit, at the sheriff's sale. (5.) Property of great value was bid in by plaintiffs at the sheriff's sale for a nominal sum : $30,000 worth for $100.

These facts were quite enough to excite suspicion and were ample warning to put a purchaser on inquiry as to the rights of the heirs, who have had no day in court, and suggest the language of WOODWARD, J., in Riland *v.* Eckert, 11 Har., 215—"collusive judgments, which are sometimes concocted between faithless administrators or executors and pretended creditors, and which have been used for stripping families of their inheritance."

At the time of the decedent's death an "action or legal proceeding was depending," to wit, the sci. fa. against the defendant to revive the judgment; this brings the case directly within the 27th section of the Act of February 24, 1834, which provides : "The court in which *any action or legal proceeding may be depending* as aforesaid shall have power to require, by a writ of scire facias, such executors or administrators, within twenty days after the service thereof, to be-

[Middleton v. Middleton.]

come party to such action or proceeding, or to show cause, at the next succeeding term, why they should not be made party thereto by judgment of the court, and further proceedings be had in such action or proceeding." The sci. fa., then, ought to have been a sci. fa. to require the administratrix to become a party to the proceeding pending at the decedent's death. The 33d section of that Act, providing that after the death of a judgment debtor no execution shall issue on the judgment, without a prior sci. fa. against his personal representatives, is prohibitory, not permissive, and it cannot apply to a case like the present, where the plaintiff, at the time of defendant's death, could not have had execution himself, if living. For the same reason McMillan v. Red, and the other cases relied on by plaintiff in error, are inapplicable. Suppose that this judgment had been opened on the motion of the defendant, in his lifetime, showing *prima facie* a good defence to it, and he had died after issue joined and before his defence had been determined, will it be contended that the plaintiffs could then have ignored this defence and taken judgment by default against the administratrix? And yet that would not have been more entirely a "proceeding depending" than this case as it is.

But it is said by plaintiffs that the court below fell into error "in not adverting to the effect of the sci. fa. of 1879 as an abandonment of the pending sci. fa. of 1877."

The only cases in which it has been held that a plaintiff may, for his own advantage, abandon a sci. fa. to revive, are where, in his first sci. fa. he has failed to make the terre tenant a party, but has obtained a judgment of revival against the defendant alone; he may, (if in time) have another sci. fa. upon the original judgment, against the defendant and the terre tenant, to continue the lien against land which the defendant has aliened since the judgment: Fursht v. Overdeer, 3 W. &. S., 470; Little v. Smyser, 10 Barr, 381. It had been previously determined in several cases that a recovery in a sci. fa. to revive a judgment was a bar to any further sci. fa. on the same judgment: Collingwood v. Carson, 2 W. & S., 220; Custer v. Detterer, 3 W. & S., 28; and the exception was established to enable a plaintiff to correct his mistake by a new writ including the terre tenant. It is submitted that no case can be found where a plaintiff has, by the device of abandoning a sci. fa. issued against a defendant in his lifetime, rid himself of a substantial defence pending and undetermined at the time of defendant's death.

There was, in the early cases, some difficulty in laying down the principles upon which the sci. fa. to revive a judgment should be regarded—whether as a common law writ of scire

[Middleton *v.* Middleton.]

facias, or as an action of debt upon the judgment.   The result was, after a good deal of litigation, that with respect to the right to judgment upon two sheriff's returns of "nihil," the action should be assimilated to a common law sci. fa., in which two returns were equivalent to garnishment (which even quite recently has not been free from doubt :   See Taylor *v.* Young, 21 P. F. S., 81), and that as to the form of the judgment, it should be.the same as in an action of debt "quod recuperet," which is entirely different from the judgment on a sci. fa. at common law.   So that where the defendant is living, a judgment on a sci. fa. is a new judgment, and has a lien on all estate owned by defendant at the time of its entry, without regard to the lien of the original judgment :   Duff *v.* Wynkoop, 24 P. F. S., 300; Fursht *v.* Overdeer, 3 W. & S., 470; Stewart *v.* Peterson, 13 P. F. S., 230.   But the judgment "quod recuperet," is given only in cases where the defendant is living. When he is dead, and the sci. fa. is against his personal representatives, the judgment is prescribed in each case by the statute which directs and regulates the sci. fa.   Under the 33d Section of the Act of 1834, by virtue of which the plaintiff claims to have proceeded, the judgment is an award of execution, inasmuch as that section requires that the executor or administrator be warned "to show cause against the issuing thereof."   Hence such a judgment has a lien only on the land bound by the lien of the original judgment which has been revived.   The new judgment is but a continuation of the original lien, and not a new judgment, "*quod recuperet:*" Shaeffer *v.* Child, 7 Watts, 84.

. The deed from the sheriff to the plaintiffs "executors of Allen Middleton, deceased, *their successors and assigns,*" was not a sufficient deed to vest in them an estate of inheritance : 2 Blackstone's Com., 104, 107; Gray *v.* Packer, 4 W. & S., 18.

. The error in the description of the thirty-three acre tract in the fi. fa. vend. ex. and sheriff's deed was a fatal error.   By protracting the description it appears that a large piece of the land, included in the sale to defendant, is not included in that which was levied on, and sold by the sheriff.   There is nothing to amend the sheriff's deed by, inasmuch as both the condemnation in the fi. fa. and the vend. ex. contain precisely the same description as the sheriff's deed. ˙ It was competent for the sheriff to have taken in execution a part only of the land of John.W. Middleton; and who can say that he did not mean to do so, in face of the fact that that is just what he did.

. Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

. The general question presented by the case stated is,

[Middleton v. Middleton.]

whether the plaintiffs' title to certain real estate, of which John W. Middleton died seized, is such as the defendant is bound to accept.

In February, 1873, Allen Middleton, plaintiffs' testator, obtained judgment against John W. Middleton, the then owner in fee of the real estate in question. Within five years thereafter, a *scire facias* to revive, &c., was issued against the defendant in the judgment, to which he pleaded payment, and the issue joined thereon was pending and undetermined at the time of his decease in December, 1878. No further proceedings were had in that case; but, in February, 1879, a *scire facias*, to revive *et quare executionem non* was issued on the original judgment, served on Sarah Middleton, administratrix of John W. Middleton; and, in default of appearance, judgment was entered and amount liquidated at $49,282.23. By virtue of a *fieri facias* issued on the judgment the real estate in question was levied on, condemned and afterwards sold by the sheriff on a *venditioni exponas*, and by him conveyed to plaintiffs.

It is claimed by the plaintiffs, on the authority of Fetterman *v.* Murphy, 4 Watts, 424, Brobst *v.* Bright, 8 Id., 124, Wells *v.* Baird, 3 Barr., 351, Konigmaker *v.* Brown, 2 Harris, 269, Baxter *v.* Allen, 27 P. F. Smith, 468, and a long line of kindred cases, that the judgment on the *scire facias* against the administratrix and subsequent sale by the sheriff were sufficient to invest the purchasers with a good marketable title. It is virtually conceded by the learned counsel for defendant that this would be so, were it not for the fact that an issue on the former *scire facias* was pending and undetermined at the death of the defendant in the original judgment. We are of opinion, however, that this feature of the case can make no difference—that it is insufficient to distinguish the case in principle from those above cited. Notwithstanding the pendency of the issue in the first *scire facias* and the fact that more than five years had elapsed since the entry of the original judgment, as between the judgment creditor and his debtor, the judgment was a valid, subsisting lien on the land at the date of the defendant's death in December, 1878 : Brown's Appeal, 10 Norris, 485. According to well settled principles it was therefore unnecessary to make his widow and heirs parties before proceeding to execution against the real estate of the intestate bound by the lien of the judgment recovered in his lifetime : Shearer *v.* Brindley, 26 P. F. Smith, 300, and cases there cited. The administratrix might have appeared and defended the issue on the *scire facias* against her intestate, but she did not do so : nor did she appear to the *scire*

*facias* issued against herself. The judgment in default of appearance and the subsequent proceedings were not irregular.

The estate conveyed by the sheriff's deed was not limited by the omission of words of inheritance. The Act of June 16, 1836, provides that real estate sold by the sheriff shall be held and enjoyed by the purchaser, his heirs and assigns, as fully and amply, and for such estate or estates as the defendant had therein.

The error in describing the land sold and conveyed by the sheriff is immaterial. The erroneous courses may be corrected by the description contained in the deed, and thus the land intended to be conveyed may be readily located with reasonable certainty. In the case of descriptive errors, where no one is shown to be injured thereby, the rules of construction, applicable to deeds *inter partes*, apply also to sheriffs' deeds: White et al. *v.* Luning, 93 U. S., 514.

Upon due consideration of the facts presented in the case stated we are of opinion that the deeds therein referred to, in connection with the proceedings resulting in the sheriff's sale, vested in plaintiffs a good and marketable title in fee simple to said tracts of land, and hence they are entitled to judgment.

Judgment reversed, and judgment on the case stated is now entered in favor of the plaintiffs and against the defendant for thirty thousand ($30,000) dollars with interest from March 1, 1883, and costs; said judgment to be satisfied of record upon the defendant paying the amount thereof, with costs, and plaintiffs giving him a deed, in fee simple, clear of all incumbrances, for said tracts of land.