# King, Appellant, *v.* King.

*Judgments—Execution—Levy—Sheriff's return—Sheriff's deed —Laches—Estoppel.*

1. While a judgment is not a lien as to after-acquired real estate, such real estate is liable to be seized in execution and sold in satisfaction of the judgment, and where the same is properly described in the levy and is sold under judicial process the title of the debtor will pass to the purchaser.

2. Where a judgment debtor owns certain undivided interests in lands a levy upon all the right, title, and interest of the debtor therein, and a sale thereof under judicial process, will carry the entire interest of the debtor whether acquired before or after the date of his judgment, and the fact that the sheriff's deed recites in the habendum clause that the property was conveyed for such estate as the debtor therein held at the time of judgment is not material, as a sheriff's deed necessarily passes all that the debtor could convey, and the sheriff has no power to change the effect of his sale.

3. Where in such case the debtor lived for five years after the sale, and never made any objection thereto, although extensive improvements were made thereon by the purchaser, it is too late after his death for his widow to claim dower rights in the property sold.

Argued Oct. 16, 1914. Appeal, No. 99, Oct. T., 1914, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1912, No. 1769, in equity, dismissing bill in equity for partition in case of Leila Zug King v. Walton W. King, J. C. Garard, J. E. McKelvey, Milton R. Travis, Guardian of Margaret Virginia King, Caroline S. King Freeborn, Mary Teagarden, Frances Teagarden, Tillie Robinson, Union Trust Co., Guardian of John Lindsay King, Connolly-Fanning Company, a Corporation, Annie Louisa Lathwood and Annie Louisa Lathwood, Executrix of James Lathwood, deceased, and Frank R. Stoner. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Bill in equity for partition. Before Shafer, J.

The facts appear by the opinion of the Supreme Court.

The court dismissed the bill. Plaintiff appealed.

*Error assigned*, among others, was the decree of the court.

George H. Rankin, with him George C. Lewis, for appellant.

F. P. Iams, with him J. M. Shields, for appellees.

Opinion by Mr. Justice Brown, January 2, 1915:

The appellant, the complainant below, is the widow of Lindsay King, who died intestate June 25, 1906. She instituted this proceeding for an accounting and partition, averring that her husband, at the time of his death, was the owner of an undivided one-ninth interest in two tracts of land described in her bill of complaint. The facts in the case are matters of record, and a recital of

those that are material is necessary to a proper understanding of appellant's claim. Mrs. Jane L. King, her mother-in-law, died July 28, 1898, seized in fee of two tracts of land in the City of Pittsburgh. She devised these to her three sons, Walter W., Frank J. and Lindsay. On September 10, 1900, Frank J. died intestate, leaving to survive him a widow, but no issue. His one-third interest in the said two tracts of land descended, subject to his widow's dower, to his next of kin, who were his two brothers, Walter W. and Lindsay, and a niece, Margaret Virginia King, the only child of a deceased brother, William Mc. King. On May 16, 1900, J. A. Wakefield, Esq., recovered a judgment in the Court of Common Pleas of Allegheny County against Lindsay King, and it became a lien on his one-third interest in the two pieces of land devised by his mother to him and his two brothers. Wakefield took no steps to make this judgment a lien upon the one-ninth interest of Lindsay King acquired by a descent from his brother, Frank, but on March 13, 1901, he issued a writ of fieri facias upon the judgment, furnishing to the sheriff, in writing, a description of the two pieces of land involved in this proceeding and a direction to that officer to "levy upon and sell all the right, title, interest, claim and demand of Lindsay King of, in and to" the same. The sheriff attached this paper to his writ and, after having advertised for sale all the interest of Lindsay King in the said lands, sold the same on April 1, 1901, to W. J. Gilmore, to whom he subsequently delivered a deed, the execution of which he had acknowledged in open court. Gilmore conveyed the interest which he purchased to J. P. Teagarden, who died seized thereof on August 10, 1911, leaving to survive him a widow, Mary Teagarden, and a daughter, Frances Teagarden, who are parties defendant in this proceeding.

The contention of the appellant is that, by the sale on the execution issued upon the Wakefield judgment against her husband, there passed to the sheriff's vendee

only his undivided one-third interest in the lands which he had acquired by devise from his mother, and that the one-ninth interest which had come to him by descent from his brother, Frank, was not sold by the sheriff, but remained in him up to the time of his death, charged with her dower. The Wakefield judgment was a lien only upon King's one-third interest in the lands, and a levy made upon that interest under an execution issued upon the judgment would have created no independent lien against it. The citation of authorities by learned counsel for appellant was not needed in support of this proposition, for it is not involved in the question before us. When the Wakefield execution was issued Lindsay King had real estate which was not bound by the judgment, and it consisted of his undivided one-ninth interest in the two pieces of land which he had inherited from his brother, Frank, after the entry of the judgment. As to it that interest was after-acquired real estate, but liable to be seized in execution and sold in satisfaction of the judgment. This was settled a century ago in Colhoun v. Snider, 6 Binney 134, and the doctrine of that case "has been followed without doubt or hesitation from that time to this": Ross & Co.'s and Elsbree's Apps., 106 Pa. 82. Was the one-ninth interest seized and sold by the sheriff under the writ which Wakefield placed in his hands? If it was—and this is the controlling question in the case —there remained no interest in Lindsay King in the lands, and the appellant is dowerless in them.

The writ of execution which was placed in the sheriff's hands commanded him that, of the goods, chattels, lands and tenements of Lindsay King, he cause "to be levied and made" the sum due Wakefield on his judgment. To the writ the sheriff attached the paper given him by Wakefield, definitely describing the two pieces of real estate involved in this controversy and directing him to levy upon and sell all "the right, title, interest, claim and demand of Lindsay King of, in and to" the same. King's interest in the lands at that time was not three-ninths,

but four-ninths, and the sheriff's return to his writ was that, by virtue of it, he had exposed the premises "within described" to sale by public vendue or outcry and had sold the same to W. J. Gilmore. What were the premises within described, within the meaning of the sheriff's return? They were undoubtedly the two pieces of land described in the paper furnished by Wakefield, which included the direction to sell all the right, title, interest, claim and demand of King of, in and to them. The return clearly meant that the sheriff had done what he had been directed to do. It was followed by the execution, public acknowledgment and delivery of a deed by the sheriff to his vendee. It is, however, contended that the one-ninth interest which Lindsay King had acquired after the entry of the judgment against him was not sold by the sheriff, because it does not affirmatively appear that he had levied on that interest. We do not so read the records. In addition to what appears in the paper attached to the writ of execution and the sheriff's return to it, his deed, acknowledged in open court, recites that, by virtue of said writ, he "seized and took in execution, all the right, title, interest and claim of Lindsay King of, in and to" the lands fully described in his deed; and it has been distinctly held that a sheriff's deed is to be regarded as a return by him. In Smull v. Mickley, 1 Rawle 95, the sheriff made no return at all to the writ upon which he had sold certain real estate, and it was held by Chief Justice Gibson, who presided at a trial where the validity of the sheriff's deed was the sole question for determination, that it was invalid, by reason of the failure of that officer to make a return to the writ of execution. On appeal this ruling was reversed, the Chief Justice himself having been convinced that he had erred in deciding that the deed was invalid. In holding that it was valid, this court said of it: "For all purposes of information to the court the sheriff's deed is a return. It is produced, read in court, and entered on the record. It recites the sale, the mode and time of it, the name of

the purchaser, the price and the payment of the money."
This was repeated in Hinds v. Scott, 11 Pa. 19, where we
said, through Mr. Justice BELL, that a sheriff's deed was
equally efficacious as a return. That the sheriff was
clothed by his writ with full authority to seize and sell
the one-ninth interest in the lands, is not to be doubted,
and such authority appears on the face of the deed which
he executed and delivered to Gilmore. The learned
court below was, therefore, clearly right in its conclu-
sion that there had been a seizure and sale of the one-
ninth interest. But it is further contended that this was
error, because the habendum clause in the deed is, "to
have and to hold the said described real estate as fully
and for such estate and under such conditions as the said
Lindsay King had and held the same at the time of judg-
ment aforesaid, according to the form and effect of the
said writs and of the acts of assembly in such cases made
and provided." If the deed were one between private
parties, consideration would have to be given to this,
but none need be given it, for, as the court below very
properly said, "a sheriff has no power to change the
effect" of his sale. "A sheriff's deed passes all that the
debtor could convey, and is necessarily as operative in
every respect": Scheetz v. Fitzwater, 5 Pa. 126. "The
Act of June 16, 1836, provides that real estate sold by
the sheriff shall be held and enjoyed by the purchaser,
his heirs and assigns, as fully and amply, and for such
estate or estates as the defendant had therein": Middle-
ton v. Middleton, 106 Pa. 252.

Another feature of this case is not to be overlooked.
The two pieces of land devised by Mrs. King to her three
sons were improved, the improvements consisting of
twelve brick dwelling houses, a foundry, factory and
other buildings. Lindsay King lived for five years after
all his right, title and interest in the two pieces of land
had been sold by the sheriff, and it does not appear that,
after such sale, he ever claimed any further interest in
the rents, issues and profits. He made no objection to

the sale, and, if he had no further interest in the lands after it, his widow had none in them now. In Hinds v. Scott, supra, the land was sold on an execution issued on a judgment, the lien of which had expired before the sheriff's sale. If the validity of that sale had been questioned in time by the defendant in the execution, it would have been set aside. Speaking of the failure of the plaintiff in the judgment to continue the lien of it by a writ of scire facias, we said: "Had this objection been made by the defendant in proper time, the execution against him must have been set aside......It lies only in the mouth of the defendant himself to take exception in proper time, for he may choose to, and frequently does, waive the writ of scire facias. It is intended for his personal protection. Should he choose to suffer his land to be sold by execution without it, neither he, nor those claiming under him, can afterwards be permitted to call in question the validity of the sale." We, however, base our affirmance of the decree before us on the ground that the sheriff's sale to Gilmore clearly passed all of King's interest in the lands.

As we are of opinion that the relation of cotenant between Lindsay King and the other owners of the common property ceased when his interest was sold by the sheriff, the second question raised by the appellant calls for no discussion. Even if an outstanding title was purchased by one or more of the existing cotenants, the purchase of it did not enure to the benefit of appellant. The assignments of error are overruled and the decree is affirmed at the costs of the appellant.